Matter of Riverkeeper, Inc. v New York State Dept. of Envtl. Conservation (2022 NY Slip Op 04336)

Matter of Riverkeeper, Inc. v New York State Dept. of Envtl. Conservation

2022 NY Slip Op 04336

Decided on July 7, 2022

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:July 7, 2022

533206
[*1]In the Matter of Riverkeeper, Inc., Appellant,
v
New York State Department of Environmental Conservation, Respondent.

Calendar Date:May 31, 2022

Before:Garry, P.J., Egan Jr., Clark, Aarons and McShan, JJ.

Pace Environmental Litigation Clinic, Inc., White Plains (Todd D. Ommen of counsel), for appellant.
Letitia James, Attorney General, Albany (Elizabeth A. Brody of counsel), for respondent.
Sylvia O. Hinds-Radix, Corporation Counsel, New York City (Nathan Taylor of counsel), for City of New York, amicus curiae.

Garry, P.J.
Appeal from a judgment of the Supreme Court (Bartlett III, J.), entered March 21, 2021 in Albany County, which dismissed petitioner's application, in a proceeding pursuant to CPLR article 78, to review a rule promulgated by respondent.
The Clean Water Act (hereinafter CWA) was enacted "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters" (33 USC § 1251 [a]). In passing the act, Congress expressly outlined a number of goals, including to have fishable and swimmable waters wherever attainable by 1983 (see 33 USC § 1251 [a] [2]). To that end, each state must establish water quality standards (see 40 CFR 131.3 [i]; 131.4 [a]), subject to Environmental Protection Agency (hereinafter EPA) approval (see 40 CFR 131.5, 131.21 [c] [2]), that include appropriate water use designations and water quality criteria sufficient to protect those uses (see 40 CFR 131.6 [a], [c]; 131.10). If a state wishes to amend its standards to remove a "[d]esignated use[]" (40 CFR 131.3 [f]), it must follow certain procedures, including conducting a "use attainability analysis" to demonstrate that attaining the use is not feasible (40 CFR 131.10 [j]; see 40 CFR 131.3 [g]; 131.10 [g]).
To implement this federal mandate and comply with state law (see ECL 17-0301), respondent has promulgated an extensive classification system for all surface waters and groundwaters in the state (see generally 6 NYCRR part 701), assigning each classification one or more "[b]est usages" (6 NYCRR 700.1 [a] [5]). This ligation involves Class I and Class SD saline surface waters in the New York City area. At all relevant times, the best usages of Class I waters have included secondary contact recreation, such as boating, and fishing (see 6 NYCRR 701.13; see also 6 NYCRR 700.1 [a] [56]), and fishing has been the best usage of Class SD waters (see 6 NYCRR 701.14). Respondent also imposes additional measures under state law to improve water quality beyond the best usage(s) assigned to a given classification by what it refers to as "suitability goals." Historically, Class I waters have had the goal of being suitable for fish, shellfish and wildlife propagation and survival (see 6 NYCRR 701.13). Class SD waters have been required to be suitable for fish, shellfish and wildlife survival (see 6 NYCRR 701.14).
In 2015, respondent proposed a rule to amend this state's water quality standards for Class I and Class SD waters, indicating that the need for such action was to meet the CWA's swimmable goal and avoid the EPA imposing the goal itself through federal regulations (see NY Reg, Dec. 3, 2014 at 17-19; see generally 33 USC § 1313 [c] [3], [4]; 40 CFR 131.22). The proposed rule would accomplish this by adding language to the rules for Class I and Class SD waters requiring that those waters be "suitable for primary contact recreation," such as swimming (6 NYCRR 700.1 [a] [49]), "although other factors may limit the use for this purpose" (NY Reg, Dec. 3[*2], 2014 at 17; see 6 NYCRR former 701.13, 701.14), and by adopting corresponding water quality criteria for total and fecal coliforms (see NY Reg, Dec. 3, 2014 at 17; see also 6 NYCRR 703.4 [a], [b]).
After the proposed rule was adopted (see NY Reg, Nov. 4, 2015 at 15), respondent submitted its amended rule to the EPA for review. The EPA approved respondent's suitability language but took no action with respect to respondent's revisions to the total and fecal coliform standards, stating that the revised standards did not meet modern requirements for primary contact recreation waters and indicating that the state was expected to adopt scientifically supportable standards for all primary contact waters in the state, including Class I and Class SD waters, as soon as possible. While discussions between respondent and the EPA on this issue were ongoing, petitioner and several other advocacy groups commenced a proceeding in federal court against the EPA and others, seeking, among other things, to compel the EPA to issue a formal determination on respondent's revised water quality standards.[FN1] The EPA subsequently issued a formal disapproval, reiterating that, because respondent had amended its rules for Class I and Class SD waters to include the designated use of primary contact recreation, its revised water quality criteria were not protective enough.
Respondent later requested that the EPA reconsider its disapproval, urging that the EPA had misinterpreted the impact of respondent's 2015 rulemaking. Respondent explained that, where the CWA uses "designated usage," respondent uses "best usage" and, because respondent had not made primary contact recreation a "best use" for Class I and Class SD waters, adoption of more stringent water quality criteria was not necessary. Respondent indicated that, by adding suitability goals, it intended to improve the water quality of Class I and Class SD waters "towards achieving" the CWA's swimmable goal. In reply, the EPA found that respondent's explanation ran counter to the record for its 2015 rulemaking and directed that, if it was respondent's current intent that Class I and Class SD waters do not support primary contact recreation as a designated use, respondent would need to provide the EPA with additional information, including an explanation as to what respondent's suitability language does mean for the purpose of water quality criteria and the procedure by which respondent would inform the public of its changed intent.
In 2020, in an effort to comply with the EPA's directives, respondent proposed and adopted further amendments for its Class I and Class SD waters classifications with the express purpose of clarifying that the best usages of said waters "were/are 'secondary contact recreation and fishing' and 'fishing,' respectively," and removing the suitability language that had been added in 2015 (NY Reg, June 17, 2020 at 13-15; see 6 NYCRR 701.13, 701.14). Respondent did not amend the water quality [*3]criteria for Class I and Class SD waters (see NY Reg, June 17, 2020 at 13-15), and, as a result, those waters remain subject to the total and fecal coliform standards respondent adopted in 2015 (see 6 NYCRR 703.4). Respondent then notified the EPA of its action, and the EPA informed respondent that the 2020 rulemaking "appear[s] to revise" the state's water quality standards and therefore respondent was required to submit the amendments to the EPA for review. If respondent did not so do, the EPA would proceed with a rulemaking to promulgate criteria to protect primary contact recreation in the state's Class I and Class SD waters.
Petitioner then commenced the present CPLR article 78 proceeding seeking to annul the 2020 rulemaking, arguing that respondent acted irrationally by removing primary contact recreation protections from Class I and Class SD waters on the basis that the suitability language added in 2015 was unnecessary and did not alter the water quality standards, given that respondent had made statements during that rulemaking process to the contrary. Petitioner also argued that respondent's promulgation was unlawful as it removed from the state's water quality standards what the EPA had determined to be a designated use without first conducting a use attainability analysis, in violation of the CWA. Respondent answered, and Supreme Court ultimately dismissed the petition, finding that respondent acted rationally and lawfully in promulgating the 2020 rule, without a use attainability analysis, because the 2015 rule did not change the best usage(s) of Class I and Class SD waters. Petitioner appeals.
The limited inquiry before us is whether respondent, at the time of the challenged administrative action, acted rationally and lawfully. We agree with Supreme Court that it did. "An administrative agency's exercise of its rule-making powers is accorded a high degree of judicial deference, especially when the agency acts in the area of its particular expertise" (Matter of Consolation Nursing Home v Commissioner of N.Y. State Dept. of Health, 85 NY2d 326, 331 [1995] [citations omitted]; see Matter of Neurological Surgery, P.C. v New York State Dept. of Health, 203 AD3d 1252, 1254 [2022]). This is because, "having authored the promulgated text and exercised its legislatively delegated authority in interpreting it, the agency is best positioned to accurately describe the intent and construction of its chosen language" (Andryeyeva v New York Health Care, Inc., 33 NY3d 152, 174 [2019]; see Matter of Lansingburgh Cent. Sch. Dist. v New York State Educ. Dept., 196 AD3d 937, 940 [2021]). Although "an agency may be deemed to have acted irrationally if an interpretation of a regulation marks an unsubstantiated departure from the agency's previous position on a given subject" (Matter of Entergy Nuclear Indian Point 2, LLC v New York State Dept. of State, 130 AD3d 1190, 1192 [2015]; see Matter of Board of Educ. of the Kiryas Joel Vil. Union Free [*4]Sch. Dist. v State of New York, 110 AD3d 1231, 1235 [2013], lv denied 22 NY3d 861 [2014]), it is the party seeking to nullify such a regulation that carries the heavy burden of demonstrating its irrationality or unreasonableness (see Matter of Big Apple Food Vendors' Assn. v Street Vendor Review Panel, 90 NY2d 402, 408 [1997]; see Matter of Montgomery v New York State Dept. of Corr. & Community Servs., 192 AD3d 1437, 1439 [2021], lv denied 37 NY3d 908 [2021]).
Initially, it is clear from the plain language of the 2015 rulemaking that respondent did not make primary contact recreation a best usage of Class I and Class SD waters (see NY Reg, Nov. 4, 2015 at 15; NY Reg, Dec. 3, 2014 at 17). Although the effect respondent's suitability goals had on the state's water quality standards is open to different fair interpretations (see generally 40 CFR 131.3 [f]), this Court may not adjudge respondent's interpretation of its own regulations irrational simply because another rational construction exists (see Matter of Elcor Health Servs. v Novello, 100 NY2d 273, 280 [2003]; Matter of Clearview Ctr., Inc. v New York State Off. of the Medicaid Inspector Gen., 172 AD3d 1582, 1586 [2019]). Notwithstanding some responses during notice and comment for its 2015 rulemaking that muddy this complex subject matter, respondent has not wavered in its position that its suitability goals, which are not defined in its regulations or the ECL (see Matter of National Fuel Gas Distrib. Corp. v Public Serv. Commn. of the State of N.Y., 169 AD3d 1334, 1339 [2019], appeal dismissed and lv denied 33 NY3d 1053 [2019]), are distinct from best usages and that, under state law, only best usages are intended to trigger the federal requirements for designated uses. Respondent's explanation of its suitability goals as additional measures under state law to improve this state's water quality beyond that required for the best usage(s) assigned to a given water body classification, while continuing to communicate the best usage(s) for those waters in the interest of the public (see ECL 17-0301 [2]),[FN2] is rational. Further, it is wholly in line with respondent's authority to implement more stringent water quality standards than those required under the federal regulatory scheme (see 40 CFR 131.4 [a]; see also 33 USC § 1370).[FN3] Thus, because respondent rationally concluded that the addition of suitability goals in 2015 did not add primary contact recreation as a best usage for Class I and Class SD waters, it cannot be said that respondent's 2020 rulemaking removing the suitability goals was an irrational departure from a previous position regarding the designated uses for said waters.
As to the alleged need for a use attainability analysis (see generally 40 CFR 131.3 [g]; 131.10 [g], [j]), although the EPA's formal disapproval of the 2015 rulemaking conveyed to respondent the EPA's understanding that respondent had amended the designated uses of Class I and Class SD waters to include primary [*5]contact recreation, upon respondent's request for reconsideration, the EPA provided respondent with the opportunity to correct the administrative record, explain the impact of its suitability goals and address the confusion generated by the 2015 addition thereof. In an effort to satisfy that general directive, respondent undertook the 2020 rulemaking with the express purpose "[t]o clarify [that] best usages of Class I and [Class] SD waters were/are 'secondary contact recreation and fishing' and 'fishing,' respectively" (NY Reg, June 17, 2020 at 13). It is for the EPA to determine whether respondent removed a designated use from its water quality standards and thus whether respondent is required to undertake a use attainability analysis (see 33 USC § 1313 [c] [3], [4]; 40 CFR 131.10 [g], [j]). At the time of the challenged administrative action before us, that issue was unsettled. We therefore cannot conclude that respondent's 2020 rulemaking was unlawful.
Egan Jr., Clark, Aarons and McShan, JJ., concur.
ORDERED that the judgment is affirmed, without costs.

Footnotes

Footnote 1: Respondent indicates that this litigation remains ongoing.

Footnote 2: As highlighted by the City of New York in its amicus curiae brief, many Class I and Class SD waters serve as industrial waterways and commercial shipping channels or have other physical constraints, such as swift currents, that render them unsuitable, and even dangerous, for actual swimming. The City also advises that some of said waters are dead end tributaries, with little or no circulation, and that attainment of the most stringent bacteria standards would be impossible even with costly sewer upgrades. Some of said waters are also active Superfund sites due to contamination unrelated to bacteria present in sewage.

Footnote 3: We note that respondent has drawn the distinction between best usages and suitability goals that may be limited by other factors in several other water quality rules (see e.g. 6 NYCRR 701.8, 701.9, 701.12).